(No. 22633.—

THE CENTRAL ILLINOIS LIGHT COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(W. B. BOYCE, Admr., Defendant in Error.)

*Opinion filed February 15, 1935.*

SMITH & BROWER, and MILES GRAY, (PATTON, ALLEN & CONVERSE, of counsel,) for plaintiff in error.

F. J. TILTON, for defendant in error.

Mr. JUSTICE FARTHING delivered the opinion of the court:

Edward P. Milledge filed application for adjustment of claim for compensation with the Industrial Commission on account of injuries received by him which arose out of and in the course of his employment with the Illinois Power Company. The Central Illinois Light Company has been substituted for the former company in this proceeding. The arbitrator entered an award for $15 per week for 266 weeks and $10 for one week and thereafter a pension for life of $26.66 per month. The commission confirmed the award. The death of Milledge on February 20, 1934, was noted in the circuit court of DeKalb county and his administrator was substituted as a party. The award for the full amount was there confirmed. This writ of error has been allowed for a further review of the cause.

It was stipulated before the arbitrator that notice of the injury and demand for compensation were made within the time required by law; that the earnings of Milledge during the year last preceding the injury were $1800 and that his average weekly wage was $34.63; that he was sixty-five years of age and had no children under sixteen; that first aid, medical, surgical and hospital services were provided by the company and that no compensation was paid on account of the injury.

The testimony introduced before the arbitrator established that Milledge had been engaged in the house-moving business for fifty years. He was employed by the com-

pany at one dollar an hour to assist in moving a boiler from a railroad station. He furnished the tools and the company furnished all materials and all other labor required. Milledge was to oversee the men on the job, but R. K. Dallas, district manager of the company, testified on its behalf that Milledge and all the other men employed in moving the boiler worked under the direction of Teach, the company's superintendent. This testimony stands uncontradicted. Thus the relation of employer and employee is established, contrary to the contention of plaintiff in error that Milledge was an independent contractor. Plaintiff in error is a public utility, and its business is furnishing gas, water, electricity, steam, hot water and transportation. In the moving operation a cable had been fastened to the boiler and it was stretched across a street in DeKalb. Milledge, and Reynolds, another employee, were standing near by when an automobile driven by a Dr. Wheeler ran into the cable and broke it. Milledge and Reynolds were struck by the broken cable. Milledge's head and neck were cut, scratched and bruised. He was rendered unconscious and suffered from shock and concussion. He remained in the hospital from two weeks to thirty days.

The only medical testimony in the record is that of the plaintiff in error's physician, Dr. J. W. Ovitz, who attended Milledge at the hospital. He stated that Milledge was unconscious for four or five days and described the wounds on Milledge's head and the abrasions on his neck. The evidence shows Milledge could not move about as well at the time of the hearing as before his injury. He staggered, could not grasp objects at the first attempt, such as taking hold of a chair or clasping another person's hand. His speech and hearing were affected and he was unable to work. The testimony shows no improvement in his condition after he left the hospital, except that the cuts and abrasions were healed. Dr. Ovitz admitted that it was not improbable that the severe shock to Milledge's nervous sys-

tem would result in permanent injury. This witness also testified that he did not examine Milledge for anything aside from the cuts and abrasions at the time he discharged him and had not examined him later on.

There is a considerable similarity as to the ages, head injuries and results to the employees in this case and in *Solar-Sturges Manf. Co.* v. *Industrial Com.* 315 Ill. 352. In that case we held that the testimony was sufficient to support a finding of partial permanent disability. All that appeared there in addition to the injuries shown in this record was an injury to the employee's right knee, but that does not make a material difference in the two cases, since the award involved in that case was not limited to any loss of the use of a leg but was for general disability. The testimony and objective symptoms shown are sufficient to sustain this award. *Harrisburg Coal Co.* v. *Industrial Com.* 315 Ill. 377; *United States Fuel Co.* v. *Industrial Com.* 313 id. 590.

Relying upon section 21 of the Workmen's Compensation act (Smith's Stat. 1933, p. 1433,) plaintiff in error contends that the judgment of the circuit court must be reversed, and that the administrator can collect, in any event, only those installments which had accrued at the time of Milledge's death. That section provides in part: "Any right to receive compensation hereunder shall be extinguished by the death of the person or persons entitled thereto, subject to the provisions of * * * paragraph (*e*) of section 8 of this act relative to specific loss." Provision is made to cover cases where the beneficiary dies whose award was made under section 7—the death section. The award under review was made under section 8. The language of section 21 plainly says that any right to compensation shall be extinguished by the death of the person entitled thereto. This award was in favor of Milledge himself, and his death extinguished all payments that fell due after those which accrued during the first 83 and three-

sevenths weeks, and for these alone the administrator can recover. *Stanswsky* v. *Industrial Com.* 344 Ill. 436.

Defendant in error's contention that since Milledge might in his lifetime have petitioned for and received a lump sum settlement his administrator can collect the whole award is not well founded. He would only have been entitled to receive a lump sum settlement had he petitioned for it and shown that it was to his best interest that such a settlement be made. In any event, section 21 covers the matter, and what has already been said disposes of this contention.

Plaintiff in error contends that the finding that Milledge was employed and doing work in the usual course of its business is manifestly against the weight of the evidence. It relies upon section 5 of the Workmen's Compensation act, which defines the term "employee" as "every person in the service of another * * * but not including * * * any * * * person who is not engaged in the usual course of the trade, business, profession or occupation of his employer." It says that moving this boiler was not a part of the usual business it conducted, which is furnishing gas, water, electricity, steam, hot water and transportation. In addition to certain decisions from foreign jurisdictions, it relies upon *Oakwoods Cemetery Ass'n* v. *Industrial Com.* 327 Ill. 132, and *Berry Co.* v. *Industrial Com.* 318 id. 312. In the former case the claimant was injured while directing traffic at a cemetery on Memorial day. We held that the cemetery association was not liable, because the employment was not a part of the usual or ordinary cemetery business. In the *Berry Co. case* the company was in the business of subdividing and selling real estate. The claimant was employed to assist in wrecking a barn on a tract of land which was being put in shape to subdivide and sell. We held that tearing down the barn was not a part of the ordinary subdivision work and was not a work of independent importance or a source of profit to

the company but that it was a work merely incidental, casual and temporary in character. In the case before us the plaintiff in error needs and uses boilers to generate steam and to heat the water which it furnishes to its customers. Preparing to install a boiler by moving it from the railroad station to its plant was not a matter of daily occurrence in its business, but that does not prevent its being a part of its usual and customary business. The employment of Milledge was in the usual course of its business.

The judgment of the circuit court of DeKalb county is therefore affirmed as to 83 and three-sevenths weeks' compensation which had accrued on the date of death. The judgment is reversed as to the remaining weeks for which compensation was ordered paid, and as to them the award is abated.

*Affirmed in part and reversed in part.*