## G. FOX & CO., INC.

*vs.*

## CORNELIUS J. DANAHER, LABOR COMMISSIONER

Superior Court      Hartford County      File No. 64481

MEMORANDUM FILED JULY 10, 1941.

*Harry Nair,* of Hartford, for the Plaintiff.

*Francis A. Pallotti,* Attorney General and *Harry Silverstone,* Assistant Attorney General, of Hartford, for the Defendant.

SIMPSON, J. This is an appeal from the assessment of unemployment compensation contributions.

The facts in the case are not in dispute. Prior to 1937 the plaintiff was operating a large department store in the City of Hartford in a building owned by it, in which it sold, at retail, various kinds of merchandise. In 1937 the plaintiff determined to increase its floor space and accommodations to meet its expanding business, and entered into contracts to construct a four-story addition to its building, thereby increasing its floor space by about 200,000 square feet. The new building was begun in 1937 and in the early part of 1939 was ready to be turned over to contractors who were to manufacture and install new fixtures, and also remodel the fixtures in the old portion of the building, or install new ones in place thereof, and match the woodwork in the old portion with the new. The entire project was under the supervision and direction of George A. Kyle, plaintiff's general superintendent, in charge of maintenance, equipment and new construction. During the erection of the new building and alteration of the old one, plaintiff's merchandise business was carried on as usual.

On May 15, 1939, the plaintiff entered into a contract with John Peterson & Company, a corporation located in Chicago, Illinois, to provide all the materials and perform all the work for the manufacturer, delivery and installation of certain store fixtures on the third and fourth floors in plaintiff's store, according to certain drawings and specifications prepared by Taussig-Flesch & Associates, Inc., architects and designers. There were several other contractors for like work. The Peterson contract included the installation of new woodwork and fixtures in the old part of the building to match the woodwork and fixtures in the new portion of the building.

The Peterson Company began the work of remodeling and installation of new fixtures in the building on August 10, 1939. The contract price for the work to be done by the Peterson Company was $96,761. During the third and fourth quarters of the year 1939 the Peterson Company employed a large number of workmen who performed the work in plaintiff's premises. The Peterson Company did not become subject to chapter 280e of the 1939 Cumulative Supplement to the General Statutes (Unemployment Compensation Act) until March 4, 1940, when it became voluntarily subject to the Act as of January 1, 1940.

The defendant administrator made demand upon the plain-

tiff for unemployment compensation contributions in respect to the wages paid to said employees of John Peterson & Company during the third and fourth quarters of 1939. The plaintiff failed to comply with said demand and the defendant thereupon made an assessment under authority of subsection (f) of section 1345e of the 1939 Supplement to the General Statutes. The plaintiff has appealed from this assessment.

Section 1335e of the 1939 Supplement to the General Statutes, in so far as applicable to the situation and the claims in this case, provides as follows: "If an employer shall contract with or shall have under him any contractor or subcontractor for any work which is part of said employer's usual trade, occupation, profession or business, and which is performed in, on or about premises under such employer's control, and if such contractor or sub-contractor shall not be subject to this chapter, such employer shall, for all the purposes of this chapter, be deemed to employ each individual in the employ of such contractor or sub-contractor for each day during which such individual is engaged solely in performing such work; but this provision shall not prevent such employer from recovering from such contractor or sub-contractor the amount of any contributions he may be required by this chapter to pay with respect to wages of such individuals for such work."

To render the employer liable under this statute the following requirements must appear or be established:

(a) That the relation of principal and contractor or subcontractor must exist with respect to the work which is to be done for the principal employer.

(b) That the work must be in, on or about premises controlled by such employer.

(c) That the work done must be for work which is a part of such employer's usual trade, occupation, profession or business.

(d) That the contractor or subcontractor is not subject to the provisions of the Unemployment Compensation Act.

It is conceded that (a), (b) and (d) are met. The question raised by the appeal, on this part of the case, is whether the work done by John Peterson & Company was work which was a "part of said employer's usual trade, occupation, profession or business."

So far as known, this part of the Act has not been construed by our courts. Both parties have referred to cases arising under the Workmen's Compensation Act as being helpful in reaching a conclusion. The defendant lays stress on the case of *Bello vs. Notkins,* 101 Conn. 34. In that case the court held that if an owner, desiring to erect a building, chose to retain control over the work of construction by parcelling it out in portions among separate contractors, each of whom was responsible solely to him for a particular portion of the work, the owner ws engaged in the trade or business of erecting a building, and liable as "principal employer" under section 5345 of the Workmen's Compensation Act (Gen. Stat. Rev. 1918). The provisions of the Act did not contain the word "usual" in reference to trade or business of the principal employer. In *Fox vs. Fafnir Bearing Co.,* 107 Conn. 189, the court held that the washing of the windows of defendant's factory was an essential part of the maintenance of its trade or business, though not a process in the actual work of manufacturing ball bearings. It said (p. 195) : "A helpful, but not necessarily conclusive, inquiry is whether the work in question is of a character that ordinarily would be performed in the factory by its regular employees." It also said (p. 195) : "It [such work] is clearly distinguishable from work done in connection with the repair or alteration of the factory buildings." In *Bogoratt vs. Pratt & Whitney Aircraft Co.,* 114 Conn. 126, the court held that the letting out to separate contractors of the work of constructing buildings for defendant's manufacturing plant was not a part or process "in the trade or business" of the defendant company, within the meaning of section 5345. The court said, however, on page 139: "Factual situations may be presented which, by reason of an effect otherwise destructive of the declared objects of provisions of this kind hereinbefore stated, as in *Bello vs. Notkins,* may require or warrant holding such case to come within this section of the statute; but the present case discloses no such features and we hold that the construction of the factory buildings was not 'a part or process in the trade or business' of the Aircraft Company within the meaning of §5230 [Gen Stat. Rev. 1930]."

The instant case would, it seems to the court, come within the principles of the *Bello vs. Notkins* case, if it were not for the use of the word "usual" in the Act under consideration.

If it were not for the use of that word, the plaintiff might be said to have been in the business, temporarily at least, of erecting a building and fitting it for its use. *The Bello vs. Notkins* case was decided in 1924. The Legislature is presumed to know the principles of law stated in that case. The Unemployment Compensation Act did not become effective until November 30, 1936. The probable intent of the Legislature in using the word "usual" in the Unemployment Compensation Act, was to restrict, in some measure, the decision in the *Bello* case. The word "usual" in the Act must be considered in the ordinary meaning of that word. "Usual" means "such as is in common use; such as occurs in ordinary practice, or in the ordinary course of events; customary; ordinary; habitual; common." (*Webster's New International Dictionary* [2d ed.].) Applying this definition to the work being done for the plaintiff in the erection of a four-story addition to its old building, thereby increasing its floor space by approximately 200,000 square feet, and having equipment and fixtures manufactured and installed throughout the building, the work can hardly be said to be a part of its "usual trade, occupation, profession or business." This being so, the plaintiff in having such work done, would be excluded from the operation of the Act.

The court is aware that in some jurisdictions, some cases such as *Central Illinois Light Co. vs. Industrial Commission,* 359 Ill. 430, 194 N.E. 530; *Shannon's Case,* 274 Mass. 92, 174 N.E. 235; *State ex rel. Lundgren vs. District Court,* 141 Minn. 83, 169 N.W. 488; *Royal Indemnity Co. vs. Industrial Commission,* 105 Colo. 25, 94 Pac. (2d) 697, held substantially that work done to further or promote the regular business of employer was in the "usual trade or business" of the employer. The decisions in this State indicate that no such broad view of the statute should be taken. The work done for the plaintiff was undoubtedly done for promoting its sale of merchandise, but it cannot be said to be a "part of said employer's usual trade, occupation, profession or business."

Judgment is therefore rendered for the plaintiff setting aside the assessment, without costs.