# Illinois Official Reports

## Appellate Court

---

**Bell v. Illinois Workers' Compensation Comm'n,**
**2015 IL App (4th) 140028WC**

---

Appellate Court
Caption

JANET K. BELL, Administrator of the Estate of Mary J. Nash, Appellant, v. THE ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.* (Dan Pilson Auto Center, Appellee).

District & No.

Fourth District
Docket No. 4-14-0028WC

Filed
Rehearing denied

May 1, 2015
June 26, 2015

Decision Under
Review

Appeal from the Circuit Court of Coles County, No. 13-MR-123; the Hon. Teresa K. Righter, Judge, presiding.

Judgment

Circuit court's judgment reversed, Commission's decision vacated, and cause remanded.

Counsel on
Appeal

Sandra K. Loeb and Matthew Duco, both of Spiros Law, P.C., of Danville, for appellant.

Stephen J. Klyczek (argued), of Hennessy & Roach, P.C., of Springfield, for appellee.

Panel                              PRESIDING JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.
Justices Hoffman, Hudson, Harris and Stewart concurred in the judgment and opinion.

**OPINION**

¶ 1    Mary J. Nash filed an application for adjustment of claim under the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2008)), seeking benefits for injuries she sustained while she was working for Dan Pilson Auto Center (employer). Prior to the arbitration hearing, Ms. Nash died of causes unrelated to her work accident. Janet K. Bell, Ms. Nash's sister and the administrator of her estate (claimant), filed an amended application for adjustment of claim substituting herself as the claimant. After conducting a hearing, an arbitrator awarded temporary total disability (TTD) benefits and medical expenses and found that the claimant had sustained a permanent partial disability from her work injury. However, the arbitrator ruled that any permanent partial disability (PPD) benefits that had accrued prior to Ms. Nash's death abated with her death and declined to award any such benefits to her estate.

¶ 2    The claimant appealed the arbitrator's decision to the Illinois Workers' Compensation Commission (the Commission). The Commission unanimously affirmed and adopted the arbitrator's decision. The claimant then sought judicial review of the Commission's decision in the circuit court of Coles County, which confirmed the Commission's ruling. This appeal followed.

¶ 3                                        FACTS
¶ 4    Mary J. Nash worked for the employer as a clerical worker for approximately 25 years. The parties stipulated that Ms. Nash sustained accidental injuries that arose out of the course of her employment on January 30, 2008, when she slipped and fell in the employer's parking lot. She was transported by ambulance to Sarah Bush Lincoln Medical Center, where she was diagnosed with an acute spiral fracture of the right distal femur. On February 1, 2008, Ms. Nash was admitted to the Carle Foundation Hospital, where she underwent a surgical procedure on her fractured femur that the medical records described as an "open reduction and internal fixation" with plates and screws.

¶ 5    Although Ms. Nash's femur healed properly and without complications in the months following the surgery, she remained too weak to walk without assistance. On July 16, 2008, Ms. Nash's surgeon, Dr. Alain Desy, noted that weakness in Ms. Nash's legs prevented her from "fully ambulating" and that she was still using a wheelchair. Dr. Desy also noted at that time that, although some of Ms. Nash's weakness had preexisted her accident, she was able to walk without any assistive device prior to the accident. On August 27, 2008, Brian J. Cummings, Dr. Desy's physician's assistant, noted that Ms. Nash was experiencing very slow recovery of strength despite very sincere ongoing physical therapy efforts. Cummings suspected that Ms. Nash had an underlying neurological or rheumatological condition

preexisting her work injury but not manifesting itself strongly enough to impede her lifestyle before August 2008. A neurology consult was recommended.

¶ 6     On September 23, 2008, Ms. Nash was evaluated by Dr. Russell Cantrell, the employer's section 12 examiner. After examining Ms. Nash and reviewing her medical records, Dr. Cantrell opined that Ms. Nash had reached maximum medical improvement (MMI) with regard to her work-related right femur fracture. Dr. Cantrell also opined that Ms. Nash's reported inability to resume ambulation without reliance on a wheelchair was not related to her work-related orthopedic injury but rather was "associated with an underlying neuropathic process." He recommended a more complete set of electrodiagnostic studies. However, Dr. Cantrell opined that Ms. Nash was capable of performing her regular work duties without restrictions as they related to her work-related right femur fracture.

¶ 7     On March 18, 2009, Ms. Nash filed an application for adjustment of claim with the Commission seeking benefits for work-related injuries to her right leg that she allegedly suffered on January 30, 2008.

¶ 8     On November 12, 2009, Ms. Nash was evaluated by Dr. Conrad Wiehl, a neurologist. Dr. Wiehl's examination revealed that Ms. Nash had diffuse weakness and more weakness proximally in her lower extremities than distal weakness. Dr. Wiehl suspected that Ms. Nash was suffering from "a muscular dystrophy of some sort." Accordingly, he ordered EMG/nerve conduction studies and blood tests.

¶ 9     Ms. Nash returned to Dr. Wiehl on January 28, 2010, after undergoing the recommended studies. Dr. Wiehl testified that the diagnostic testing confirmed that Ms. Nash had a myopathy, which Dr. Wiehl defined as "an underlying muscle weakness syndrome." He opined that Ms. Nash's January 30, 2008, work accident "accelerated the clinical symptoms associated with her muscle disease." Dr. Wiehl also testified that, based upon his review of the medical records, Ms. Nash had reached MMI from her work-related injury as of August 27, 2008.

¶ 10     On August 19, 2010, Ms. Nash died of causes unrelated to her work-related injuries. On April 12, 2011, the claimant, Ms. Nash's sister and the administrator of her estate, filed an amended application for adjustment of claim which substituted herself as the claimant in the place of Ms. Nash.

¶ 11     The arbitration hearing took place on June 25, 2012. During the hearing, the claimant testified that, prior to her January 30, 2008, work accident, Ms. Nash appeared able to walk without an assistive device, although she used a cane on occasion. The claimant also stated that Ms. Nash was able to stand up without assistance prior to the work accident. The claimant testified that Ms. Nash relied upon a wheelchair to get around at all times after the work accident, including when she returned to work. The claimant did not observe Ms. Nash stand up without assistance or walk on her own at any time after the accident.

¶ 12     The employer stipulated that Ms. Nash sustained accidental injuries that arose out of and in the course of her employment on January 30, 2008. The employer also stipulated that the claimant was entitled to a TTD underpayment of $99.79, and the arbitrator awarded that amount to the claimant. The claimant sought reimbursement of medical expenses incurred by Ms. Nash while she was alive, including the cost of medical treatment rendered on the date of the accident and the cost of modifying her home to allow her to use a wheelchair. The arbitrator ordered the employer to pay these expenses, finding that the medical evidence showed that Ms. Nash needed assistance to ambulate as a result of her work-related injuries.

¶ 13    The claimant also sought recovery of the PPD benefits that accrued from the date that Ms. Nash reached MMI until her death on August 19, 2010. The employer disputed the claimant's right to recover such benefits, arguing that any PPD benefits to which the claimant would have been entitled abated upon her death.

¶ 14    After reviewing relevant case law and Commission decisions, the arbitrator agreed with the employer and held that Ms. Nash's claim for PPD benefits had abated. The Commission apparently found that the claimant had established that Ms. Nash's work accident resulted in a permanent partial disability. (While discussing our holding in *Divittorio v. Industrial Comm'n*, 299 Ill. App. 3d 662 (1998), the Commission stated that "[l]ike the instant case, medical testimony along with testimony from a relative [in *Divittorio*] established the existence of a permanent partial disability.") However, the arbitrator ruled that sections 8(e)(19) and 8(h) of the Act (820 ILCS 305/8(e)(19), (h) (West 2008)), which authorize the surviving spouse and dependants of a deceased claimant to continue an injured employee's claim for PPD benefits after the employee's death, allow the recovery of PPD benefits only if one or more such eligible dependents exist at the time of the employee's death. Because Ms. Nash had no dependents, the arbitrator held that her estate was not entitled to recover any PPD benefits on her behalf, even PPD benefits that accrued before her death. The arbitrator noted that the Act "allows dependents to recover from the economic loss caused by [the claimant's] injury," and concluded that "[a]llowing [Ms. Nash's] estate to collect permanency benefits, where she had no dependents, really serves no purpose."

¶ 15    The claimant appealed the arbitrator's decision to the Illinois Workers' Compensation Commission. The Commission unanimously affirmed and adopted the arbitrator's decision. The claimant then sought judicial review of the Commission's decision in the circuit court of Coles County, which confirmed the Commission's ruling. This appeal followed.

¶ 16                              ANALYSIS

¶ 17    The issue presented in this appeal is whether the estate of an unmarried claimant who dies without leaving any dependents may recover PPD benefits that accrued prior to the employee's death, or, alternatively, whether any claim to such benefits abates with the employee's death. The answer to this question depends upon the proper construction of section 8 of the Act (820 ILCS 308/8 (West 2008)). Issues of statutory construction are questions of law, which are reviewed *de novo. Nationwide Bank & Office Management v. Industrial Comm'n*, 361 Ill. App. 3d 207, 209-10 (2005). The relevant facts are undisputed. Accordingly, we review the Commission's decision *de novo*.

¶ 18    In this case, the Commission found that "medical testimony along with testimony from a relative established" that Ms. Nash had a permanent partial disability. The Commission also found that Ms. Nash had reached MMI before her death. Accordingly, the Commission tacitly acknowledged that at least some PPD benefits accrued prior to Ms. Nash's death. Nevertheless, relying on sections 8(e)(19) and 8(h) of the Act, the Commission ruled that any claim to PPD benefits, even a claim to PPD benefits that accrued and were due and owing prior to the Ms. Nash's death, abated with her death and could not be recovered by Ms. Nash's estate because Ms. Nash died without any dependents.

¶ 19    That was error. Section 8(e)(19) provides:

"In a case of specific loss and the subsequent death of such injured employee from other causes than such injury leaving a widow, widower, or dependents surviving before payment or payment in full for such injury, then the amount due for such injury is payable to the widow or widower and, if there be no widow or widower, then to such dependents, in the proportion which such dependency bears to total dependency." 820 ILCS 305/8(e)(19) (West 2008).

Similarly, section 8(h) provides:

"In case death occurs from any cause before the total compensation to which the employee would have been entitled has been paid, then in case the employee leaves any widow, widower, child, parent (or any grandchild, grandparent or other lineal heir or any collateral heir dependent at the time of the accident upon the earnings of the employee to the extent of 50% or more of total dependency) such compensation shall be paid to the beneficiaries of the deceased employee and distributed as provided in paragraph (g) of Section 7." 820 ILCS 305/8(h) (West 2008).

By their plain terms, these provisions merely establish *to whom benefits will be paid* if the employee dies with a spouse or dependents before he has been fully compensated for his work-related injury. They do not limit the ability of a deceased employee's estate to collect accrued, unpaid benefits that were due and owing to the employee while he was alive. Neither provision addresses what happens when an employee dies without leaving a surviving spouse or any surviving dependents, as in this case. Accordingly, neither provision should be read as barring an employee's estate to collect accrued benefits under such circumstances.

¶ 20    As the claimant notes, both our supreme court and this court have already reached a similar conclusion. In *Republic Steel Corp. v. Industrial Comm'n*, 26 Ill. 2d 32 (1962), the Commission found that the claimant sustained accidental injuries arising out of his employment which permanently and totally incapacitated him and ordered the employer to pay the claimant $40 per week for 281 weeks plus an annual pension for life of $1,350 payable in equal monthly installments. *Id.* at 34-35. While the employer's appeal of the Commission's award was pending, the claimant died. The administrator of the claimant's estate (his wife) moved to substitute the administrator as the claimant in place of the employee. The circuit court of Cook County granted the substitution and ordered the employer to pay the administrator the amount of workers' compensation benefits that had accrued as of the date of the claimant's death. *Id.* at 35-36. The circuit court abated any additional benefit payments awarded by the Commission's order. *Id.*

¶ 21    Our supreme court affirmed. The supreme court rejected the employer's arguments that the administrator of the employee's estate "ha[d] no standing to collect workmen's compensation benefits, which can be paid only to dependents," and that the benefits that had accrued from the date of the employee's work accident until the date of his death "should be abated." *Id.* at 46. Citing its prior precedents, the supreme court ruled that, although an employee's death "extinguishe[s] all payments falling due after [the employee's] death," an administrator of the claimant's estate may recover for "those payments accrued to the date of death." *Id.*

¶ 22    Applying *Republic Steel Corp.*, we reached the same conclusion in *Nationwide Bank & Office Management v. Industrial Comm'n*, 361 Ill. App. 3d 207 (2005). In that case, an employee filed a claim for TTD benefits and medical expenses but died of causes unrelated to his work injury prior to arbitration. *Id.* at 208. The employee's widow carried on the employee's claim but did not file a motion for substitution. *Id.* The arbitrator awarded TTD

benefits and medical expenses, and the employer filed a petition for review with the Commission. While the employer's petition was pending, the employee's widow died, and the claim was carried on by the widow's estate. *Id.* (The employee and his wife had no children and left no dependents.) The Commission affirmed and remanded the matter to the arbitrator with instruction to take further evidence regarding the proper calculation of the employee's average weekly wage.

¶ 23    On remand, the employer moved to dismiss the claim, arguing, *inter alia*, that the claim had been abated due to the employee's death. *Id.* The arbitrator declined to address this issue and issued a decision finding that the employee's average weekly wage was $0. On appeal before the Commission, the employer again argued that the employee's claim had been abated. The Commission rejected this argument and held that the employer was required to pay the medical expenses and TTD benefits ordered in the original award. *Id.* at 209. However, on appeal, the circuit court reversed and set aside the arbitrator's award, ruling that section 8(h) of the Act abated the claim upon the death of the employee's wife. *Id.* at 210.

¶ 24    We reversed the circuit court's judgment and reinstated the Commission's decision. In so ruling, we relied upon our supreme court's decision in *Republic Steel Corp.* which, we noted, had (1) rejected the argument that an employee's estate lacks standing to collect accrued benefits "which could only be paid to dependents"; and (2) "not[ed] that benefits which accrued up to the date of death were payable to the estate, *regardless of dependency*, while benefits which did not accrue until after the date of death were abated." (Emphasis added.) *Id.* at 211. We rejected the employer's argument that the supreme court's holding in *Republic Steel Corp.* had been legislatively overruled by the enactment of section 8(h) in 1975. We noted that "section 8(h) by its express language does not address accrued benefits." *Id.* We observed that section 8(h) only addresses benefits which are to be "distributed as provided in" section 7(g) of the Act, which provides for payment in installments; accordingly, we ruled that section 8(h) "specifically addresses benefits to be paid out in installments" and leaves *Republic Steel Corp.*'s holding regarding accrued benefits "untouched." *Id.* Because the accrued TTD benefits and medical expenses at issue in *Nationwide Bank* were accrued benefits that were payable to the defendant prior to date of his death (rather than future installment payments that would have accrued and been payable on some later date), we held that the benefits awarded by the Commission could be paid to the employee's widow's estate. *Id.* at 213.

¶ 25    We reach the same conclusion here. In this case, Ms. Nash's estate seeks only those PPD benefits that had accrued and were payable, due, and owing to Ms. Nash prior to her death. It does not seek future installment payments that would have accrued and become payable to Ms. Nash on some future date had she survived. *Republic Steel Corp.* and *Nationwide Bank* provide that such benefits may be collected by Ms. Nash's estate.

¶ 26    The Commission found *Republic Steel Corp.* and *Nationwide Bank* distinguishable because, "[i]n each of those cases, when the injured worker died, there were one or more eligible dependents as set forth by [sections 8(e)(19) and 8(h)] of the Act." We do not find this distinction dispositive. In *Republic Steel Corp.*, our supreme court rejected the argument that an injured employee's estate "has no standing to collect workmen's compensation benefits, which can be paid only to dependents." *Republic Steel Corp.*, 26 Ill. 2d at 46. The supreme court held that the administrator of the estate may collect benefits that had accrued prior to the defendant's death. Although the administrator of the employee's estate in *Republic Steel Corp.* happened to be the employee's widow, the fact that she was an eligible dependent under the

Act played no part in the supreme court's holding. The employer in *Republic Steel* argued that the employee's widow, who was suing in her capacity as the administrator of the employee's estate rather than in her personal capacity, lacked standing to collect workers' compensation benefits because such benefits were payable "only to dependents," not to the employee's estate. The supreme court expressly rejected that argument. Thus, as we noted in *Nationwide Bank*, *Republic Steel Corp.* stands for the proposition that benefits which accrued up to the date of death are payable to the employee's estate, "*regardless of dependency*." (Emphasis added.) *Nationwide Bank*, 361 Ill. App. 3d at 211. In *Nationwide Bank*, we noted that this aspect of *Republic Steel Corp.*'s holding was not overruled by the enactment of section 8(h) of the Act because section 8(h) does not address accrued benefits.

¶ 27    Similarly, our holding in *Nationwide Bank* was not dependent in any way on the fact that the employee's widow was alive at the time of the employee's death. Like the employee, the employee's widow in *Nationwide Bank* had died during the pendency of her husband's claim (*i.e.*, before his workers' compensation award was final). Nevertheless, applying *Republic Steel Corp.*, we awarded accrued benefits to the widow's estate. *Nationwide Bank*, 361 Ill. App. 3d at 211-13. In so holding, we made it clear that benefits that accrue before the injured employee's death are payable to the estate "regardless of dependency." *Id*. at 211.

¶ 28    In this case, the Commission also found that allowing Ms. Nash's estate to collect PPD benefits when she had no dependents "really serves no purpose." The employer essentially argues the same point by asserting that, unlike medical expenses and TTD benefits (which could "allow[ ] the estate to recover debts incurred by the decedent while living"), PPD "is purely compensation for the injury and is personal to the claimant." We are not persuaded. Like TTD benefits, PPD benefits serve as compensation for the diminishment of the employee's earning capacity which was caused by a work-related injury. Thus, unpaid PPD payments that accrued while the claimant was alive are payable to his estate, just like unpaid but accrued TTD benefits. See *Republic Steel Corp.*, 26 Ill. 2d at 46. Moreover, contrary to the Commission's assertion, there are good policy reasons to allow estates to collect such unpaid, accrued benefits. As our supreme court noted in *Republic Steel Corp.*, a contrary rule would encourage employers to "litigate and delay the payment of compensation due a legitimately disabled individual to a point beyond his death and thereby defeat his right to compensation." *Id.* at 47.

¶ 29    The employer argues that our supreme court's holding was "rendered obsolete" by the subsequent enactment of sections 8(e)(19) and 8(h) of the Act, which "limit[ed] recovery of a deceased petitioner's benefits to only surviving spouses and dependents." In *Nationwide Bank*, we specifically rejected this argument with respect to section 8(h). *Nationwide Bank*, 361 Ill. App. 3d at 211. For similar reasons, we also reject the employer's argument with respect to section 8(e)(19). As noted above, both sections merely provide that, where an injured claimant dies leaving one or more eligible dependents, such dependents may recover his workers' compensation benefits, including any installment benefits that were to be paid on dates after the claimant's death. They say nothing about what happens when an injured employee dies without leaving any eligible dependents. Thus, these sections of the Act do not defeat the employee's estate's right to collect benefits that accrued before the claimant's death, as confirmed by *Republic Steel Corp.*

¶ 30    Like the Commission, the employer relies upon *Divittorio v. Industrial Comm'n*, 299 Ill. App. 3d 662 (1998), and *Peabody Coal Co. v. Industrial Comm'n*, 255 Ill. App. 3d 828 (1994),

in support of its argument that benefits owed to a deceased claimant may only be paid to his or her eligible dependents. However, these cases merely addressed the question of who was entitled to collect benefit payments where there may have been an eligible dependent. Neither case held or implied that an injured employee's estate may not collect accrued benefits where there are no such dependents.

¶ 31    We have considered the employer's remaining arguments and we find them meritless. Accordingly, we reverse the judgment of the circuit court, vacate the Commission's decision, and remand this matter to the Commission with instructions to determine what PPD benefits accrued prior to Ms. Nash's death and to award such benefits, if any, to the claimant.

¶ 32                                    CONCLUSION
¶ 33    For the foregoing reasons, we reverse the judgment of the circuit court of Coles County confirming the Commission's decision, vacate the decision of the Commission, and remand this matter to the Commission for further proceedings consistent with our decision.

¶ 34    Circuit court's judgment reversed, Commission's decision vacated, and cause remanded.