(No. 14585.—Judgment affirmed.)

THE W. A. JONES FOUNDRY AND MACHINE COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(AUGUST G. URBANSKI, Conservator, Defendant in Error.)

*Opinion filed June 21, 1922.*

WORKMEN'S COMPENSATION—*when rupture of blood vessel in brain is an accidental injury.* Where an employee, while working in a foundry, suffers the rupture of a blood vessel in the brain, which leaves him insane, the injury may be said to be accidental within the meaning of the Compensation act, and an award may be allowed at the suit of a conservator even though the employee was afflicted with arteriosclerosis and had a high blood pressure, so that he might have suffered a similar stroke under ordinary circumstances.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. FRANK JOHNSTON, JR., Judge, presiding.

GALLAGHER, KOHLSAAT, RINAKER & WILKINSON, for plaintiff in error.

GEORGE W. THOMA, and E. MARSHALL AMBERG, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

Stanislaw Golembiewski was an ironmolder thirty-nine years old, who had been in the employ of the W. A. Jones Foundry and Machine Company for twelve years prior to November 1, 1917. He was a steady worker but was addicted to the excessive use of intoxicating liquor and had had delirium tremens. He was afflicted with arteriosclerosis and had a high blood pressure. On November 1, 1917, he was working in the foundry, carrying molten metal and pouring it into flasks. In doing this work the metal, which was melted in a large cupola, was drawn off into a vat resting upon a buggy, which ran upon tracks in the foundry. From the vat the metal was poured into an iron ladle and carried by a handle extending across the center and about two feet on either side. The ladle and handles weighed about 65 pounds, and when filled with melted iron made a total weight of about 175 pounds, which was carried by two men to the flask into which the metal was poured. The temperature of the room was about eighty degrees though the weather outside was cold enough to require an overcoat. About the middle of the afternoon Golembiewski, who had been engaged two or three minutes before in the work which has been mentioned, was seen leaning against a flask and a few of the workmen were talking to him but he did not answer. The assistant to the foundry superintendent noticing that he appeared to be unconscious, sent for a doctor. Golembiewski was sent to an emergency hospital a few moments later and afterward was taken to the Robert Burns Hospital, where he remained for eight days, when he was taken to the County Hospital. He remained there for some months, and on April 25, 1918, an inquest of insanity was held, he was found to be insane, was committed to the State Hospital for the Insane at Dunning, and his insanity has

continued from that time. A conservator was appointed by the probate court of Cook county, who on April 7, 1920, made an application to the Industrial Commission for an award of compensation from Golembiewski's employer. On a hearing before an arbitrator the compensation was denied, but upon review by the Industrial Commission upon the same evidence that was heard before the arbitrator the commission set aside the decision and entered an award in favor of the claimant. The circuit court of Cook county affirmed the award, and the employer has sued out a writ of error to reverse its judgment on the ground that the record contains no evidence of any accident arising out of and in the course of the employment.

Aside from the testimony as to what occurred at the time Golembiewski was overcome in the molding room, Dr. A. N. Stober, the only physician who was a witness, testified, in response to a hypothetical question, that heavy exertion in a heated atmosphere might contribute toward the occurrence of a cerebral hemorrhage in a man whose condition was that of Golembiewski. It might cause a hemorrhage and paralysis, and a hemorrhage which produced paralysis might also interfere with the mental condition. He said that the high tension and excessive exertion in a heated room would have a tendency to raise the blood pressure, and when the blood pressure reaches a certain point some of the vessels in the body give way, causing a hemorrhage. The vessels which are broken are those branches in the middle cerebral artery. He testified that he had seen Golembiewski in the summer of 1919 at Dunning and examined him, and that he presented certain nervous symptoms of a lesion which the doctor assumed came from the cerebral hemorrhage, and he had a paralysis of the right side. He had motor aphasia and was lacking in mentality. He had a brain lesion established for some time,—a condition which rarely recovered,—and in the doctor's opinion an operation would not improve the condition of his mind. The only

cause, in his opinion, which would produce the condition the man was in would be plugging of an artery with some substance, such as a blood clot or an embolism. Such an obstruction in the blood stream disturbs the functions of the arteries and very often results in a rupture of the artery. Heavy drinking would make a man more susceptible to just what occurred. A man who was perfectly normal would probably not have been affected under those circumstances.

Golembiewski had an attack of a somewhat similar nature in 1916, when he fell on Blackhawk avenue and was disabled for about two weeks. He subsequently returned to work and worked steadily afterward. There was no evidence of unusually heavy work or an excessively high temperature or that either the work or the temperature was such as would have been likely to be injurious to a man in a normal condition, but the evidence of Dr. Stober tends to show that the work and the temperature might be expected to produce just such an injury as Golembiewski suffered, to a man whose arteries were in the condition in which his were.

In *Matthiessen & Hegeler Zinc Co.* v. *Industrial Board,* 284 Ill. 378, we said: "The words 'accident' and 'accidental injury' imply  *  *  * that an injury, to be accidental or the result of an accident, must be traceable to a definite time, place and cause, but if there is such a definite time, place and cause and the injury occurs in the course of the employment the injury is accidental within the meaning of the act and the obligation to provide and pay compensation arises. While it is not intended, and perhaps not possible, to give a definition of the words used in the act as applied to all possible circumstances, it may safely be said that an injury is accidental, within the meaning of the act, which occurs in the course of the employment unexpectedly and without the affirmative act or design of the employee." The time and place of Golembiewski's injury are certain. There is evidence tending to show that his exertion in his

work in the heat of the molding room was the cause, and it occurred in the course of his employment unexpectedly and without any act or design on his part. It is probably true that an injury of a similar character might have happened to Golembiewski by reason of moderate exertion in a moderate temperature and not in the course of his employment, or even that he might have received a similar stroke in the absence of any exertion at all, while sitting in his home or lying in his bed, and the result would perhaps have been the same, but he did not suffer any injury in that way as a result of his disease. He was overcome while he was at work, under circumstances which furnish an adequate cause for the result, and we will not indulge in conjecture as to what might have happened under other circumstances. He might have suffered this stroke in the same way if he had stayed at home and not worked that day, but he did not and he did suffer his stroke as the combined result of his disease and his work. The rupture of the blood vessel in the brain was an accidental injury, and although his existing disease predisposed him to an accident of this character, we have held that death under such circumstances may be said to have resulted from an accidental injury and is a proper basis for an award of compensation. (*Peoria Terminal Co.* v. *Industrial Board,* 279 Ill. 352.) In *Schroetke* v. *Jackson-Church Co.* 193 Mich. 616, it was held that the death of a watchman was accidental who had heart disease and died from heart failure induced by excitement on discovering a fire and exertion in attempting to extinguish it. The case of *Gilliland* v. *Ash Grove Lime and Portland Cement Co.* 104 Kan. 771, is substantially the same in principle.

The circuit court did not err in affirming the award, and its judgment is affirmed.                *Judgment affirmed.*