(No. 33404.—

LACLEDE STEEL COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(FRANK JONES, Defendant in Error.)

*Opinion filed May 20, 1955—Rehearing denied September 19, 1955.*

EMERSON BAETZ, of Alton, and F. WM. McCALPIN and JAMES A. SINGER, of St. Louis, Missouri, (LEWIS, RICE, TUCKER, ALLEN & CHUBB, of St. Louis, Missouri, of counsel,) for plaintiff in error.

MORRIS B. CHAPMAN, of Granite City, and WISEMAN & MONDHINK, of Alton, (JOHN GITCHOFF, of Granite City, of counsel,) for defendant in error.

HARLAN L. HACKBERT, of Chicago, for *amici curiae.*

Mr. CHIEF JUSTICE BRISTOW delivered the opinion of the court:

This court has allowed a petition for writ of error filed by the Laclede Steel Company, hereinafter referred to as defendant, to review a judgment of the circuit court of Madison County confirming a compensation award entered by the Industrial Commission in favor of defendant's employee, Frank Jones, hereinafter called plaintiff.

The essential inquiry in this proceeding is whether an employee, who collapses from a coronary occlusion while performing his regular work of shoveling fuel into a furnace where steel is melted, has sustained an accidental in-

jury for which compensation is payable under the terms of the Workmen's Compensation Act.

The facts are undisputed. Plaintiff Frank Jones, age 46, had been an employee of the Laclede Steel Company for several years preceding his injury on July 24, 1951. On that day, in accordance with his customary duties, he loaded heavy ore by hand onto a wheelbarrow which he pushed for a block and one-half, and then dumped the contents near the steel furnaces. That process continued over a period of two hours, after which he assisted in tapping out the furnace by placing a long steel rod through an opening in the furnace door and knocking out a hole for the liquid steel to run out into a pit. He then began shoveling certain black material, weighing 15 to 20 pounds a shovelful, into the furnace where the steel is melted. This work involved going up close to the furnace with one foot at its door, where the heat was "as hot as a man could stand." As he stepped forward toward the open furnace door to throw in a shovelful, he blacked out and fell to the ground.

When he regained consciousness, he was taken to the company dispensary, and then to St. Joseph's Hospital in Alton, Illinois, where it was found that he suffered a coronary occlusion that caused myocardial infarction. He was hospitalized for about two weeks, followed by bed rest at home for some six weeks. When he returned to work, the company would not employ him in any capacity, and he is presently doing housework and chauffeuring for a resident of Alton, at a wage of $23 a week, as compared with his previous earning of $60 a week from the defendant company.

An employee of the company, who was working the same shift with plaintiff on the date of the alleged accident, testified for plaintiff that the heat in the furnace was approximately 1000 degrees Fahrenheit, and corroborated plaintiff's account of the intense heat near the furnace during the tapping operation and as they shovelled the material

into the open furnace. The witness also related the circumstances of plaintiff's fall, and stated that he thought at first that plaintiff had suffered a heat stroke.

The medical evidence established that at the time plaintiff fell he sustained a coronary occlusion, followed by myocardial infarction due to lack of blood supply to the heart tissues. The doctor who examined plaintiff at defendant's request testified that there was no correlation between claimant's exertion and his occlusion, if that was plaintiff's usual work. That doctor did not know whether intense heat could be a precipitating factor in occasioning plaintiff's heart attack. However, the cardiologist who testified for plaintiff stated that there was a causal relationship between the heat and exertion claimant was subjected to and his heart injury, and explained the physiological basis for that conclusion. He further stated that any strenuous exertion by plaintiff would cause him serious consequences.

The arbitrator allowed plaintiff an award for permanent partial disability as provided in the Workmen's Compensation Act, which award was confirmed by the Industrial Commission on review, and by the circuit court on writ of *certiorari*.

In this proceeding the defendant company argues that a heart attack suffered during working hours in the performance of normal and regular duties does not constitute an accidental injury arising out of the employment, under the terms of the Workmen's Compensation Act. According to defendant's rationale of the Illinois cases, there must be either some unusual strain or type of work involved, not normally incident to the job requirements, or an internal breaking or tearing of the blood vessels or heart tissue, in order to constitute a compensable accidental injury.

Plaintiff, however, maintains that the injury sustained was sudden, unforeseen, and unpremeditated, and there-

fore accidental; that it resulted from a hazard or risk to which the employee was subjected as a natural incident of his work, not common to the neighborhood; that even in the absence of the intense heat, injury or death precipitated by exertion or strain is compensable; that where there is a conflict in medical testimony it is the province of the Industrial Commission to draw inferences of fact, hence this court should not set aside the findings of the commission for plaintiff, since they are not manifestly against the weight of the evidence.

Under the terms and provisions of the Workmen's Compensation Act (Ill. Rev. Stat. 1953, chap. 48, pars. 138.1-138.28,) compensation may be awarded only for an accidental injury arising out of and in the course of employment. The word "accident" is not a technical legal term, and has been held to mean anything that happens without design, or an event which is unforeseen by the person to whom it happens. (*Baggot Co.* v. *Industrial Com.* 290 Ill. 530.) As explained in *Matthiessen & Hegeler Zinc Co.* v. *Industrial Board,* 284 Ill. 378, and reiterated in the case law, while it is not intended, and perhaps not possible, to define the words used in the act, as applied to all possible circumstances, an injury is accidental within the meaning of the act when it is traceable to a definite time, place and cause, and occurs in the course of the employment unexpectedly and without affirmative act or design of the employee. (*Matthiessen & Hegeler Zinc Co.* v. *Industrial Board,* 284 Ill. 378, 384; *Van Watermeullen* v. *Industrial Com.* 343 Ill. 73; *Marsh* v. *Industrial Com.* 386 Ill. 11.) Moreover, there need be no external violence to the body to constitute an accidental injury, and compensation may be allowed where a workman's existing physical structure, whatever it may be, gives way under the stress of his usual labor. (*Baggot Co.* v. *Industrial Com.* 290 Ill. 530; *Town of Cicero* v. *Industrial Com.* 404 Ill. 487; *Marsh* v. *Industrial Com.* 386 Ill. 11; *Carson-Payson Co.* v. *Industrial Com.*

340 Ill. 632.) Contrary to defendant's contention, there need be no showing of unusual strain or activity beyond the habitual job requirements in such cases in order to establish an accidental injury. *Baggot Co.* v. *Industrial Com.* 290 Ill. 530; *Town of Cicero* v. *Industrial Com.* 404 Ill. 487; *Jones Foundry & Machine Co.* v. *Industrial Com.* 303 Ill. 410.

In the *Baggott case* the court held an employee who suffered hemorrhages from an artery tear while engaged in vigorous muscular exertion of lifting pipes in a manner habitual to his employment has sustained an accidental injury under the Workmen's Compensation Act. The court stated at page 532: "Nothing unusual happened while the work of lifting this last load of pipe was in progress. The work was heavy, but it was the same kind of work that the two men had been doing for a couple of days." The court stressed that an extraordinary and unforeseen thing suddenly and unpremeditatedly occurred, thereby presenting the essential elements of an accident. Similarly, awards for accidental injuries were sustained where a fireman collapsed, apparently due to heart failure, while in the course of his regular firefighting duties (*Town of Cicero* v. *Industrial Com.* 404 Ill. 487,) and where a workman afflicted with arteriosclerosis and high blood pressure collapsed and suffered a stroke of paralysis while performing his customary duties in the heated molding room of a foundry. *Jones Foundry and Machine Co.* v. *Industrial Com.* 303 Ill. 410.

This court, moreover, has not made any close distinctions between types of heart and blood vessel injuries in such cases, as defendant suggests. On the contrary, we have expressly rejected "overnice" refinements. In *Marsh* v. *Industrial Com.* 386 Ill. 11, which is closely analogous to the case at bar, an employee after lifting a heavy weight in the course of his regular duties suddenly became sick and faint, and an examination disclosed a heart condition.

The court, in holding this condition to be an accidental injury under the act, stated at page 16: "We can see no distinction between a case where exertion caused a distention of an artery resulting in rupture following it, and exertion resulting in a fibrillating heart with hypertension, except that death probably results sooner in one case than in the other, but disability undoubtedly occurs in both instances."

In the instant case plaintiff sustained a heart occlusion in the course of his habitual employment, which involved admittedly strenuous muscular activity of loading and wheeling heavy ore to the steel furnaces, and shovelling heavy material into the furnaces amid intense heat "as hot as a man could stand." Defendant argues, however, that there is some medical evidence that since this was plaintiff's habitual employment the occlusion might have occurred irrespective of the exertion and as a result of natural causes unrelated to plaintiff's employment, hence, it should not be deemed to be an accidental injury.

We cannot sustain this contention. The Workmen's Compensation Act is not limited in its application to healthy employees, and where an employee in the performance of his duties, and as a result thereof, is suddenly disabled, an accidental injury is sustained, even though the result would not have obtained had the employee been in normal health. (*Jones Foundry and Machine Co.* v. *Industrial Com.* 303 Ill. 410; *Marsh* v. *Industrial Com.* 386 Ill. 11, 15.) In the *Jones Foundry case* the court unequivocally rejected the rationale offered by defendant herein, and stated at page 414: "It is probably true that an injury of a similar character might have happened to Golembiewski by reason of moderate exertion in a moderate temperature and not in the course of his employment, or even that he might have received a similar stroke in the absence of any exertion at all, while sitting in his home or lying in his bed, and the result would perhaps have been the same, but he did not

suffer any injury in that way as a result of his disease. He was overcome while he was at work, under circumstances which furnish an adequate cause for the result, and we will not indulge in conjecture as to what might have happened under other circumstances. He might have suffered this stroke in the same way if he had stayed at home and not worked that day, but he did not and he did suffer his stroke as the combined result of his disease and his work."

This approach is in accordance with that adhered to by the English cases cited with approval by this court in *Carson-Payson* v. *Industrial Com.* 340 Ill. 632. In *Hughes* v. *Clover Clayton & Co.* (1909 2 K.B. 798, 102 L.T.R. 340, Lord Chancellor Lorebarn stated: "In each case the arbitrator ought to consider whether, in substance, as far as he can judge on such a matter, the accident came from the disease alone so that, whatever the man had been doing it would probably have come all the same, or whether the employment contributed to it. In other words did he die from the disease alone, or from the disease and employment taken together, looking at it broadly. Looking at it broadly, I say, and free from overnice conjecture, was it the disease that did it, or did the work that he was doing help in any material degree."

That analysis was followed by this court in *Town of Cicero* v. *Industrial Com.* 404 Ill. 487, where it was stated that whether the employee might have died in the same way in the absence of any exertion at all while sitting in his own home, or whether he might have suffered collapse if he had stayed at home and not worked that day is immaterial, for the query before the commission was whether the work he was doing in connection with fighting the fire caused or contributed to his collapse. Since there was medical testimony therein of a causal connection between decedent's work, his collapse, and subsequent death, the conclusion could be drawn that the deceased suffered an

304

accidental injury arising out of and in the course of his employment.

In the instant case plaintiff introduced medical evidence submitted by a cardiologist that the very strenuous work, though habitual, and the intense heat could have caused or precipitated the heart occlusion and ensuing myocardial infarction. Defendant introduced no evidence in the cause.

As reiterated in the cases, it is the province of the Industrial Commission to evaluate conflicting medical testimony and conclusions, and the findings of the commission thereon will not be set aside unless manifestly against the weight of the evidence. (*Shell Oil Co. v. Industrial Com.* 2 Ill. 2d 590.) In the instant case there is ample evidence on this issue of whether the exertion and heat contributed to plaintiff's occlusion to sustain the finding and award of the arbitrator and of the Industrial Commission. Therefore, the circuit court did not err in confirming the award entered by the Industrial Commission, and the judgment for plaintiff, Frank Jones, is affirmed.

*Judgment affirmed.*