(No. 33449.—)

BETHLEHEM STEEL COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(SADIE B. HALL, Defendant in Error.)

*Opinion filed May 20, 1955—Rehearing denied September 19, 1955.*

STEVENSON, CONAGHAN, VELDE AND HACKBERT, of Chicago, (HARLAN L. HACKBERT and DOUGLAS F. STEVENSON, of counsel,) for plaintiff in error.

J. W. KOUCKY, of Chicago, for defendant in error.

Mr. CHIEF JUSTICE BRISTOW delivered the opinion of the court:

This cause is heard on a writ of error issued to the circuit court of Cook County to review a judgment confirming an award of workmen's compensation entered by the Industrial Commission in favor of Sadie B. Hall, herein called plaintiff, for the death of her husband while in the employ of the Bethlehem Steel Company, referred to herein as defendant.

The sole inquiry in the cause is whether the collapse and death of an employee from coronary thrombosis while engaged in his regular duties of carrying and heating rivets, and arranging kegs of rivets beside the furnaces, constituted accidental death under the terms of the Workmen's Compensation Act.

According to the record it appears that on the morning of August 11, 1952, decedent was the "heater," and at the direction of the company he reported for work at 6:30 A.M., an hour before his usual time, in order to light the furnaces in readiness for operations when the workmen

arrived at 7:30 A.M. There was testimony that at 7:30 A.M. the furnaces were lighted, and that the decedent was seen carrying rivets from the barrels, stacking them in piles near the furnaces, and heating the rivets in his own two furnaces.

The riveter foreman explained that it was the custom for the "heater" to put the rivets into the furnace at 7:30 A.M. and keep them hot for use as they were needed. Another workman stated that decedent was heating rivets from 7:30 to 9:30 A.M., and that he collapsed as he was getting rivets from a barrel, upon which he fell. The employee who took over decedent's job after he collapsed testified that his two furnaces were already set up, loaded with about 800 rivets, cherry hot, ready for driving, and that no one else had worked on those two furnaces that morning except decedent. It was further explained that the rivets are put in the furnace with 3½-foot iron tongs, or by pitching them in with a shovel, with each shovelful weighing about 35 to 40 pounds. In addition, decedent, as "heater," had set up the operations for the other furnaces by placing in position beside each furnace two piles of rivets in kegs, each of which weighed from 200 to 235 pounds.

During the two-hour period from 7:30 to 9:30 A.M., the temperature around the front of the furnaces was between 105 and 110 degrees, and elsewhere in the room about 100 degrees, whereas the temperature outside the plant at that time was 60 degrees.

Decedent apparently collapsed as he was getting rivets out of the barrel, for he was slumped over the barrel, with his clothes wet from perspiration. There was also some testimony that decedent had collapsed at work a year and one-half before.

The medical evidence was controverted as to whether there was a causal connection between decedent's work and his death. The coroner's physician, testifying for

plaintiff, stated in response to the hypothetical question that there was such a causal connection, since at the time of the collapse, and for some two hours prior thereto, decedent had been exposed to extremes of temperature, which caused perspiration and further weakened his physical condition. In his opinion the exertion and heat affected an already weakened heart, and contributed to his collapse. Dr. Reiffel also testified on behalf of plaintiff, and stated that in his opinion the stress and strain of the work superimposed on the loss of body fluid due to the excessive temperature, caused a spasm of the heart and collapse. On defendant's behalf, Dr. Maher testified that there was no causal connection between the circumstances in which decedent worked and his death. He explained, however, that he would not have recommended that an individual with a weakened heart carry 200 pounds of rivets, and that working in a hot place does increase the load on the heart, but does not produce death.

On the basis of substantially the foregoing evidence, the arbitrator entered an award for plaintiff, the widow of the deceased, for the death benefit under the Workmen's Compensation Act, (Ill. Rev. Stat. 1951, chap. 48, pars. 138.1-138.28,) which was confirmed by the commission on review, and by the circuit court on writ of *certiorari*. We have allowed this writ of error to clarify the meaning of the act as applied to heart cases.

Although the facts differ in nonmaterial aspects, this cause involves the same principles of law which were analyzed in *Laclede Steel Co.* v. *Industrial Com. post,* p. 296. In that case, as in the case at bar, the defendant steel company endeavored to evolve from the case law the rule that disability or death from heart disease may be deemed to result from an accidental injury only where there is some external violence or herniation, or rupture of the heart or blood vessels, or evidence of increased strain or exertion. In rejecting this rationale we held, after a

review of the cases, that no such classification is warranted, and that in some instances such refinements have been expressly rejected. (*Marsh* v. *Industrial Com.* 386 Ill. 11.) To establish an accidental injury under the terms of the Workmen's Compensation Act in heart cases, there need be neither external violence (*Baggot Co.* v. *Industrial Com.* 290 Ill. 530; *Town of Cicero* v. *Industrial Com.* 404 Ill. 487,) nor unusual strain or exertion beyond the regular duties of the job (*Baggot Co.* v. *Industrial Com.* 290 Ill. 530; *Jones Foundry and Machine Co.* v. *Industrial Com.* 303 Ill. 410,) nor an internal herniation or rupture of the heart tissue or blood vessels (*Marsh* v. *Industrial Com.* 386 Ill. 11,) for this court will not make arbitrary refinements between various types of heart disease. On the contrary, the query in each instance is whether the unforeseen and unpremeditated giving away of a part of the employee's body, resulting in disability or death in the course of his employment, could be deemed to be caused or precipitated by his work. This approach, moreover, does not preclude recovery in cases of pre-existing heart disease, since the Workmen's Compensation Act is not limited in its application to healthy employees, and an accidental injury may be sustained even though the result would not have obtained had the employee been in normal health. (*Jones Foundry and Machine Co.* v. *Industrial Com.* 303 Ill. 410.) In such cases involving pre-existing heart disease, recovery under the act depends upon whether the disability or death was the combined result of the disease and the employee's work, or the disease alone. *Town of Cicero* v. *Industrial Com.* 404 Ill. 487.

The operative facts in the case at bar are analogous to those in *Laclede Steel Co.* v. *Industrial Com.* and in *Town of Cicero* v. *Industrial Com.* In the *Laclede case* it was held that an accidental injury was sustained by an employee who collapsed from a coronary occlusion while shoveling heavy material into a steel melting furnace in extreme heat,

where there was evidence, as in the instant case, that the heat and exertion caused or precipitated the heart condition. Although the activity of decedent herein may not have been as strenuous as that involved in the *Laclede case,* nevertheless, in view of decedent's age and physical condition, the legitimate inference from the testimony and circumstances is that he had been engaged in strenuous work, in excessive heat. It was admitted that on that day he was the "heater," and was required to start work' an hour earlier, to light the furnaces and set up the piles of rivets. There is evidence that when the men arrived at 7:30 A.M. the furnaces were all lit, and that decedent had been seen between 7:30 and 9:30 A.M. sorting and carrying rivets from the barrels to piles near each furnace, and was also seen putting rivets into the furnaces. Moreover, after his collapse, his own two furnaces were found to be filled with rivets, and no one else was known to have tended those furnaces.

In *Town of Cicero* v. *Industrial Com.,* as in the instant case, decedent was over 60 years of age, had a pre-existing heart condition, and collapsed and died from a heart attack. The collapse occurred while decedent therein was directing his men in fighting a fire, and the court held that the heart spasm constituted an accidental injury, since there was medical evidence of a causal connection between the decedent's work, his collapse, and ensuing death.

In the instant case, as in the *Town of Cicero case,* the medical evidence is conflicting. Under those circumstances this court will not undertake to determine which medical experts are more worthy of credence (*Electro-Motive Division* v. *Industrial Com.* 411 Ill. 127), for we are obliged to follow the findings of the Industrial Commission, unless they are contrary to the manifest weight of the evidence. As hereinbefore noted, there is ample competent evidence to support the findings of the Industrial Commission that the decedent did sustain an accidental injury which arose

out of and in the course of his employment, and which resulted in his death. Therefore, the circuit court did not err in confirming the award of the Industrial Commission in favor of decedent's widow, Sadie B. Hall, and the judgment of that court is affirmed.

*Judgment affirmed.*