32 Ill. App.3d 91 (1975)
336 N.E.2d 97
THOMAS R. TYRRELL, Plaintiff-Appellee,
v.
MUNICIPAL EMPLOYEES ANNUITY AND BENEFIT FUND OF CHICAGO, Defendant-Appellant.
No. 58178.
Illinois Appellate Court  First District (3rd Division).
September 4, 1975.
*92 Richard L. Curry, Corporation Counsel, of Chicago (Richard F. Friedman, Assistant Corporation Counsel, of counsel), for appellant.
Ross Tyrrell, of Chicago, for appellee.
Order affirmed.
Mr. JUSTICE MEJDA delivered the opinion of the court.
Defendant, Municipal Employees Annuity and Benefit Fund of Chicago, appeals from an order entered by the trial court upon administrative review which reversed a decision of defendant's Retirement Board (Board) as contrary to the manifest weight of the evidence. The Board in its decision had denied duty disability benefits for a disability resulting from a heart attack which Thomas R. Tyrrell had allegedly suffered in the performance of his duties as an assistant attorney employed by the Chicago Board of Education. Tyrrell died while the cause was pending in the trial court and his administrator has been substituted as plaintiff.
Upon appeal defendant contends that the decision of the Board that Tyrrell was not disabled as a result of an accidental injury incurred in the performance of his duties was not contrary to the manifest weight of the evidence, and that the cause of action is barred by a statutory amendment, effective subsequent to the decision of the Board but prior to the order of the trial court, which amendment removed heart attack as a ground for the award of duty disability benefit. The following is a brief narrative of the pertinent facts.
*93 On October 16, 1970, Thomas R. Tyrrell filed an application with the Board for duty disability benefits under the provisions of section 8-160 of the Pension Code (Ill. Rev. Stat. 1969, ch. 108 1/2, par. 8-160).[*] He set forth that on June 1, 1970, he had suffered a heart attack while running up two flights of stairs at the Monroe Street Court, known as Branch 28 of the Municipal District of the Circuit Court of Cook County. At the time, he had been making his way to the courtroom of Judge Margaret O'Malley where he had been assigned to assist a teacher in the defense of criminal charges in a case pending on the trial call. Police personnel at the scene took Tyrrell into the judge's chambers and an ambulance was called; he was taken to St. Luke's-Presbyterian Hospital where a diagnosis of acute myocardial infarction was made. He was placed in the intensive care unit where he remained for 4 weeks. Following his discharge Tyrrell continued under the care of a physician and never returned to his employment.
In an affidavit accompanying the application, Tyrrell stated that he had parked his automobile at a Board of Education facility a half block from the courthouse; that he had hurried on foot down Monroe Street, carrying a portfolio in one hand and a briefcase in the other; that when he reached the courthouse he raced up the stairs to the second floor; that he then experienced sharp chest pains, heavy perspiration, and labored breathing; further, that in the previous few weeks he had been under great strain as a result of increased legal work he was handling and the temporary absence of two other attorneys in the law department. He filed affidavits of two Chicago policemen and a written statement of Judge O'Malley which corroborated the circumstances of his attack. Also filed was a statement of Dr. William Phelan of St. Luke's-Presbyterian Hospital that Tyrrell had developed severe anterior chest pains "while climbing stairs at his work," which pains were diagnosed as an acute myocardial infarction. In addition, James Coffey, chief attorney for the Board of Education, submitted a letter to the Board stating that on June 1, 1970, Tyrrell was to have appeared before Judge O'Malley in the regular course of his duties.
On December 18, 1970, the Board denied Tyrrell's application for duty disability benefits upon the basis that his disability had not been incurred in the performance of an act or acts of duty as required by section 8-160 of the Pension Code (Ill. Rev. Stat. 1969, ch. 108 1/2, par. 8-160). However, the Board granted Tyrrell ordinary disability benefits from September *94 1970 through January 1971, under the provisions of section 8-161 of the Code (Ill. Rev. Stat. 1969, ch. 108 1/2, par. 8-161). Subsequently, Tyrrell filed a complaint for administrative review of the decision of the Board. After a hearing the trial court entered an order on April 8, 1971, reversing the decision of the Board, and remanded the cause for further hearings on the application for duty disability benefits.
The Board conducted additional hearings on May 18, 1971, and June 18, 1971, pursuant to the order of the trial court. On May 18, James Coffey testified that it was within Tyrrell's duties to answer trial calls. Dr. William Fitzsimmons testified on behalf of Tyrrell that an examination reflected that he had suffered a myocardial infarction which had produced a condition of permanent disability; that there was no evidence of a prior heart condition; and that there could have existed a causal connection between the attack and the effort expended in hurrying up the stairs of the courthouse. Dr. Nathanial Greenberg testified for Tyrrell that upon an examination he found similar permanent disability and lack of evidence of previous heart abnormality, and that in his opinion the act of running up the stairs had brought on and caused the myocardial infarction. The medical history taken at the hospital at the time of Tyrrell's admission on June 1, 1970, indicated that he had suffered chest pains in a lawnmower accident in 1968. Dr. Greenberg testified, however, that Tyrrell was unconscious at the time of his admission to St. Luke's-Presbyterian Hospital and that the medical history was provided by an unknown party who had accompanied him to the hospital. Tyrrell introduced into evidence a statement of Dr. William Phelan of St. Luke's-Presbyterian Hospital that the exertion and stress of hurrying up the stairs of the courthouse was a precipitating factor in the myocardial infarction and as such could be considered a causative factor. Tyrrell also introduced into evidence the medical records of his 1968 hospitalization at Resurrection Hospital for a lawnmower accident in which one of his fingers had been partially amputated. These records contain no mention that he complained of chest pains, nor do they indicate any heart abnormality. The electrocardiogram (EKG) taken at Resurrection Hospital in 1968 was introduced into evidence by Tyrrell at the later hearing held on June 18.
Dr. Robert Mustell, an examining physician employed by the Board, first testified at the May 18 hearing that there could have been a causal connection between Tyrrell's myocardial infarction and his running up the stairs of the courthouse. However, when again called to testify on June 18, Dr. Mustell stated that in his opinion Tyrrell had suffered a heart attack in 1968 which developed into a chronic heart condition. He stated that evidence of a preexisting heart condition was to be found in the records of St. Luke's-Presbyterian Hospital as chest pains suffered by *95 plaintiff in 1968, and the EKG taken in 1968 at Resurrection Hospital which indicated a flattened "T wave" reading. Dr. Mustell then stated that it was his further opinion that there was no connection between Tyrrell's myocardial infarction on June 1, 1970, and his duties as an attorney for the Board of Education. On cross-examination, Dr. Mustell admitted that the radiologist's report which accompanied the 1968 EKG stated that the reading was within normal limits, and that other physicians could reasonably interpret the same EKG as reflecting no heart disfunction. Defendant introduced into evidence a letter dated May 10, 1971, from Dr. James A. Hunter to Dr. Mustell, listing the findings upon a referral examination which stated that a current EKG test revealed an "old infarction with no acute change."
On September 17, 1971, the Board again denied the application for duty disability benefits but granted ordinary disability benefits. After filing an amended complaint for administrative review of the decision, Tyrrell died on December 31, 1971. His administrator was given leave to substitute as plaintiff and filed a second amended complaint which prayed duty disability benefits from June 1, 1970, to the date of death. At a hearing before the trial court on May 23, 1972, defendant sought to justify the decision of the Board upon the sole basis that the heart attack bore no causal connection to the performance of his duties of employment. The trial court then entered an order which reversed the decision of the Board. Defendant now appeals from that order.
Defendant first contends that the trial court erred in holding that the decision of the Board that Tyrrell was not disabled as the result of accidental injury incurred in the performance of his duties was contrary to the manifest weight of the evidence. We disagree.
 1 Section 8-160 of the Pension Code (Ill. Rev. Stat. 1969, ch. 108 1/2, par. 8-160) provides for the payment of duty disability benefits to an employee who becomes disabled as the result of accidental injury incurred in the performance of an act or acts of duty. Although the statute has not been the subject of judicial interpretation, we are in agreement with the parties that an appropriate construction would be one analogous to the standard applicable under the Workmen's Compensation Act where recovery is allowed if an employee's injury arose out of and in the course of his employment. (Ill. Rev. Stat. 1969, ch. 48, par. 138.2.)
 2, 3 The applicability of workmen's compensation benefits to disabilities resulting from heart attack has been addressed in a series of decisions. It has therein been established that mere proof that a heart attack incurred at work is insufficient to warrant an award of compensation to the employee, in the absence of further proof that a causal connection existed between the heart attack and some phase of the employment. *96 (Orr v. Industrial Com. (1970), 47 Ill.2d 242, 265 N.E.2d 109; Rock Road Construction Co. v. Industrial Com. (1967), 37 Ill.2d 123, 227 N.E.2d 65.) Where it is demonstrated that some act or phase of the employment constituted a causal factor in bringing on the heart attack, recovery may be had, and it is not necessary that the employment be shown to have furnished the sole or even the principal causative factor. (Republic Steel Corp. v. Industrial Com. (1962), 26 Ill.2d 32, 185 N.E.2d 877.) An exception exists in cases where the employee has a previous heart abnormality which has degenerated to a state where it can be said that any exertion might be an overexertion. In those cases, compensation will be denied despite evidence that the employee had engaged in some work-related physical activity before the occurrence of the heart attack. (Williams v. Industrial Com. (1967), 38 Ill.2d 593, 232 N.E.2d 744; Illinois Bell Telephone Co. v. Industrial Com. (1966), 35 Ill.2d 474, 220 N.E.2d 435.) However, the fact that the employee suffered from a preexisting heart condition does not in and of itself establish such degeneration, and recovery ultimately depends on a determination of whether the current heart attack resulted from the combined effects of the preexisting heart abnormality and the employment, or the abnormality alone. Chicago Tribune v. Industrial Com. (1969), 42 Ill.2d 476, 248 N.E.2d 103; Bethlehem Steel Co. v. Industrial Com. (1955), 6 Ill.2d 290, 128 N.E.2d 714.
Defendant does not challenge that Tyrrell was engaged in the regular course of his duties as an attorney for the Board of Education at the time of his heart attack; rather, defendant argues that the attack did not have any causal connection with his duties and hence cannot be said to have arisen out of those duties. Four medical opinions were received by the Board on the question of whether a causal connection existed between the effort expended in hurrying up the stairs of the courthouse and the heart attack. Three of those opinions, namely, those of Dr. Fitzsimmons, Dr. Greenberg and Dr. Phelan, were to the effect that the activity either was a causal factor in producing the heart attack or could have been a causal factor. The fourth opinion was that of defendant's medical witness, the Board's physician, Dr. Mustell, who initially had also concurred. However, in his subsequent testimony, Dr. Mustell stated that it was his opinion that no connection existed between Tyrrell's heart attack and his duties as an attorney for the Board of Education. Nonetheless, the causation issue was the relationship of Tyrrell's act of running up the stairs and his heart attack, not the relationship of that attack to his duties as an attorney for the Board of Education. As a medical expert, Dr. Mustell was not competent to offer an opinion concerning Tyrrell's duties as an attorney, and the witness' opinion on such subject could not be reasonably *97 relied upon by the Board in making its final decision. In the absence of Dr. Mustell's opinion there is nothing in the record to counter the testimony and statements of the other medical experts that a causative relationship did exist or could have existed between Tyrrell's activity and his heart attack.
Defendant further argues that the Board could have reasonably concluded from the evidence that Tyrrell had a preexisting heart abnormality that had degenerated to a state where any exertion might be said to constitute an overexertion. The only evidence supporting such view is the testimony of Dr. Mustell in which he concluded that Tyrrell had suffered a prior heart attack in 1968 and had developed a chronic heart disorder. However, Dr. Mustell's own testimony indicates the unfounded nature of his conclusion concerning the previous medical history. He stated that the preexisting nature of Tyrrell's heart abnormality was evidenced by the medical history taken at the time of his admission to St. Luke's-Presbyterian Hospital and by the EKG taken in 1968 at Resurrection Hospital. The medical history was not taken from Tyrrell but from a third party who had accompanied him to the hospital. Such statement, in the absence of personal knowledge by the informant, was inadmissible as "hearsay on hearsay" (Stewart v. DuPlessis (1963), 42 Ill. App.2d 192, 200, 191 N.E. 2d 622). Furthermore, such history merely referred to the occurrence of chest pains at the time of a prior hospitalization, whereas the medical records of that hospitalization reflect that no heart dysfunction was either complained of or found. The 1968 EKG taken at Resurrection Hospital was accompanied by the radiologist's report that the readings were within normal limits. Dr. Mustell's interpretation of that test is made questionable by his admission that other physicians could interpret the same test as indicating no heart abnormality at all. Moreover, both Dr. Fitzsimmons and Dr. Greenberg testified that their examinations revealed no evidence of a prior heart condition. Even assuming that the Board could reasonably rely on Dr. Mustell's conclusion as to the existence of a prior heart condition, to then draw the inference that such prior heart condition had degenerated to a degree that any exertion would be an overexertion would be pure speculation.
Defendant finally argues that if the activities engaged in by Tyrrell which are claimed to have precipitated the heart attack are not particularly strenuous and offer no more risk than that encountered by the general public in everyday conduct, no recovery should be allowed. A similar argument was rejected in Rock Road Construction Co. v. Industrial Com. There, the court held that the normality of the activity engaged in prior to the onslaught of the heart attack was not a factor in determining whether the injury was compensable. Otherwise, an employee engaging *98 in strenuous activities as a normal course of his employment might be afforded no recovery while another who engaged in a less strenuous but unusual activity would receive full compensation. We believe that the same rationale should apply to duty disability benefits authorized under section 8-160 of the Pension Code (Ill. Rev. Stat. 1969, ch. 108 1/2, par. 8-160).
 4 Under the Administrative Review Act, the findings and conclusions of an administrative agency on questions of fact are presumptively correct and cannot be disturbed upon judicial review unless determined to be contrary to the manifest weight of the evidence. (Ill. Rev. Stat. 1973, ch. 110, par. 274; Bock v. Long (1972), 3 Ill. App.3d 691, 279 N.E.2d 464.) Based upon the evidence presented at the May 18 and June 18 hearings concerning the causal relationship between Tyrrell's heart attack and his activity immediately before it, we conclude that his entitlement to duty disability benefits was clearly evident. The trial court did not err in finding that the Board's decision denying Tyrrell such duty disability benefits was contrary to the manifest weight of the evidence.
Defendant next contends that plaintiff's cause of action is barred by a statutory amendment which removed heart attack as a ground for the award of duty disability benefits. The amendment (Ill. Rev. Stat. 1973, ch. 108 1/2, par. 8-161.1) became effective on November 22, 1971, being subsequent to the second decision of the Board which denied duty disability benefits, but prior to the order of the trial court reversing the decision. First, we will consider plaintiff's objection that since a defense based upon the statutory amendment was available to defendant in the trial court but was not presented such defense cannot now be raised for the first time on appeal. Although the plaintiff has correctly stated the general principle of waiver, it is inapplicable to defendant's specific contention. A reviewing court can take judicial notice of public acts even though those acts were not raised before the trial court. (Anderson v. Village Homebuilders, Inc. (1948), 401 Ill. 60, 81 N.E.2d 430.) Moreover, defendant's contention is based upon the premise that the statutory amendment effectively abrogates the cause of action for duty disability benefits previously available upon a disability resulting from heart attack. Assuming arguendo that this was indeed the effect of the amendment, the practical result would be to expunge and nullify plaintiff's cause of action and bring into play an exception to the general waiver principle which holds that the failure to state a cause of action may be raised at any time. (Blum v. City of Chicago (1970), 126 Ill. App.2d 228, 261 N.E.2d 457.) Under either view, defendant is not prevented from raising the statutory amendment as a defense for the first time on appeal and notwithstanding *99 a failure to present it in the trial court. We proceed to a consideration of the merits of defendant's second contention.
As previously noted, the amendment (Ill. Rev. Stat. 1973, ch. 108 1/2, par. 8-161.1) became effective subsequent to the decision of the Board, but prior to the reversal of that decision by the trial court. Subsection (a) of the amendment provides:
"Disablement because of commonly termed heart attacks, or strokes, or any disablement falling within the broad field of coronary involvement or heart disease, shall not be considered to be the result of an accidental injury incurred in the performance of duty."
Defendant contends that the amendment operates to bar plaintiff's claim. In order to have that effect the amendment would have to be considered equally applicable to duty disability claims based upon heart attack which arose either before or after the effective date of the amendment. In advocating that the amendment should be given such operational effect, defendant argues that plaintiff had no vested right in a claim under the prior statute which was beyond legislative impairment, but merely a statutory remedy which could be withdrawn by the legislature at any time. We believe it is unnecessary to decide the nature of plaintiff's interest in a claim for duty disability benefits filed under the statute prior to the instant amendment becoming effective. Rather, it would appear that the application of basic rules of statutory construction dictates that the amendment did not operate retroactively to bar plaintiff's claim.
 5 A presumption exists that a statute, or an amendment thereto, was enacted with the intention that it be given prospective application only. (Country Mutual Insurance Co. v. Knight (1968), 40 Ill.2d 423, 240 N.E. 2d 612.) In accordance with that presumption, the rule has developed that statutes or amendments are to be construed prospectively, unless the legislative intent that they be applied retroactively is clearly apparent from either the express language used or by necessary and unavoidable implication. (In re Estate of Krotzsch (1975), 60 Ill.2d 342, 345, 326 N.E. 2d 758: In re Application of County Treasurer (1973), 14 Ill. App.3d 1062, 304 N.E.2d 9; and Stanley v. Denning (1970), 130 Ill. App.2d 628, 264 N E 2d 521.) The instant statutory amendment removing heart attack as a ground for duty disability benefits contains no legislative directive for retroactive application, nor can it be said that such legislative intent arises by necessary and unavoidable implication from the terms used therein. Indeed, the amendment is silent as to how it is to be applied, leaving intact the presumption that prospective operation was intended by the legislature. Moreover, the general savings provision contained in *100 section 4 of "An Act * * * in relation to the construction of the statutes" (Ill. Rev. Stat. 1971, ch. 131, par. 4) reinforces the view that the instant amendment cannot be held to have been intended to defeat claims based on heart attack which arose prior to its effective date.
 6 Defendant further argues that in claims involving coronary-related disabilities, the amendment in question constitutes an absolute repeal of the duty disability statute, and as such, evidences a legislative intent that the amendment is to be applied retroactively. In support of this argument defendant relies upon Shelton v. City of Chicago (1969), 42 Ill.2d 468, 248 N.E.2d 121, cert. denied, 396 U.S. 906; and People ex rel. Eitel v. Lindheimer (1939), 371 Ill. 367, 21 N.E.2d 318, which held that the total and unconditional repeal of a special statutory remedy, without a savings clause in favor of pending actions, stops all actions where the repeal finds them, regardless of whether they accrued before or after the legislative change and despite the general savings provision (Ill. Rev. Stat. 1971, ch. 131, par. 4), which was determined to be inapplicable to total repeals. In our opinion, the foregoing cases are distinguishable from the instant case. The cases cited deal with total express repeals of prior remedial statutes whereas the amendment in the instant case is a limiting modification of the prior statute. This distinction was pointed out in Lindheimer where the court stated 371 Ill. 367, 375-76):
"There are different methods by which a prior statute may be repealed,  i.e., by express declaration, or by implication or through amendment or revision. Each of the above methods is governed by rules peculiarly applicable thereto, and it is necessary to keep the distinctions in mind in order to correctly apply the authorities to a particular situation. Where the legislature passes a repealing act and nothing is substituted for the act that is repealed, the effect is to obliterate such statute as completely as if it had never been passed. [Citations.] The holdings that such a repeal wipes out all remedies under the prior statute and leaves the parties where the repeal finds them [citations] necessarily makes the repealing act retrospective. The intent of the legislature that it should be so is manifest from the nature of the absolute repeal, which is quite different from an act which shows an intent to continue or only to change a remedy or penalty under a former statute."
Here, the amendment did not effect a total repeal of the duty disability statute with nothing substituted for its former provisions. Neither did it wipe out all remedies under the prior statute which necessarily required the amendment to be retroactive. It only effected an alteration which simply continues the law so modified in place of its former provisions. *101 No legislative intent dictating retroactive application is manifested by the character of the alteration, and the presumption of prospective application remains in effect, as does the pertinence of the general savings provision (Ill. Rev. Stat. 1971, ch. 131, par. 4). We therefore conclude that the provisions of the amendment do not operate to defeat plaintiff's accrued claim for duty disability benefits for disablement resulting from heart attack.
For the reasons stated, the order of the circuit court of Cook County is affirmed.
Affirmed.
DEMPSEY and GOLDBERG, JJ., concur.
NOTES
[*] Article 8 of the Illinois Pension Code, entitled "Municipal Employees', Officers' and Officials' Annuity and Benefit Fund  Cities over 500,000 Inhabitants" (Ill. Rev. Stat. 1969, ch. 108 1/2, pars. 8-101 to 8-253).