(No. 49874.-)

ARTHUR A. LEPPER, Appellant, v. THE INDUSTRIAL COMMISSION *et al.*—(Rose Construction Company, Appellee.)

*Opinion filed April 3, 1978.*

James N. Keefe, of Quincy, for appellant.

Lawrence W. Blickhan, of Lewis, Blickhan & Longlett, of Quincy, for appellee.

MR. CHIEF JUSTICE WARD delivered the opinion of the court:

This is a direct appeal by the claimant, Arthur Lepper, from a judgment of the circuit court of Adams County confirming a decision of the Industrial Commission which denied an award of compensation for an acute myocardial infarction. 58 Ill. 2d R. 302(a).

The only question to be decided is whether the decision of the Commission that the claimant's heart attack was not an accidental injury arising out of and in the course of his employment under the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.1 *et seq.*) was contrary to the manifest weight of the evidence.

On February 5, 1975, the claimant, a 60-year-old carpenter, was employed by the respondent, Rose Construction Company. He testified before the arbitrator that he had felt well when he began his workday at 8 a.m. He was helping to construct a concrete-block addition to an industrial building. Because he is tall (6 feet, 6 inches), he was given the assignment of going up and down a 24-foot, wooden extension ladder and caulking expansion joints between concrete blocks from the ceiling to the floor with a hand caulking gun. The assignment required him to work from the top to the bottom of the ladder some 10 or 12 times that morning.

A welding room adjacent to the addition under construction provided the only heat for the men working on the addition. According to the claimant's undisputed testimony, heat and gas from the welding room rose and accumulated just beneath the ceiling of the windowless addition, which had no vents or fans. On the other hand, the claimant testified, it was cold at floor level. "[W]hen you were under the ceiling you were sweating, and when you got out on the floor, being you were sweating, you would freeze to death." Because he knew he might be

called upon to work out of doors from time to time, and would not be able to change his clothes every time his duties were changed ("we just had to suffer it out"), the claimant was dressed in insulated underwear, overalls, and an insulated jacket he could easily remove.

The claimant worked under these conditions for four hours and then took his lunch break. It was too cold to eat out of doors, so the workers ate their lunches in one of the rooms of the factory, which the claimant described as being very hot and noisy. Shortly after he had finished his lunch, he experienced "tremendous chest pains" and a feeling of indigestion "like I had swallowed two gallons of warm beer and somebody put a dish towel in my throat." These pains lasted for 15 or 20 minutes. He was unable to return to his caulking duties that day and performed light duties for the rest of the afternoon.

At 5 p.m. he left the job site, telling his foreman, "If I'm not here in the morning, you will know why." The claimant's wife testified before the Commission that the foreman later told her he knew the claimant had had an attack of some kind while at work that day. When the claimant arrived home, he felt "pretty rough"; his wife testified that he was "ash gray," "his lips were blue," and "[h]is eyes didn't look right." He ate a light dinner, took a hot bath, and went to bed earlier than usual. At 2:30 a.m. he suffered what proved to be an acute myocardial infarction, and was rushed to the hospital, where he remained for 14 days. He spent five days in the intensive-care unit. He has not worked since being hospitalized. He and his wife testified that he is able to do little more than walk for a mile a day when the weather is moderate, and assist his wife for brief periods about the house.

The respondent did not present evidence before the arbitrator or the Commission. The evidence presented by the claimant was his own testimony before the arbitrator, that of his wife before the Commission, and two medical reports. One of these reports was that of the claimant's

treating cardiologist, confirming the occurrence of a heart attack and stating: "No doubt there is a causal relationship between the first episode [the pains experienced at work], which was probably the beginning of his heart attack or at least the closing of one of the coronary arteries and the actual attack occurring later that evening."

The other report was prepared by an internist who had examined the claimant on behalf of the respondent. That physician confirmed that the claimant had suffered an acute myocardial infarction on the evening in question, but concluded: "In my opinion, the degree of environmental stress, which the patient reports existed on that date, is not sufficient to cause an acute myocardial infarction in a patient without pre-existing (albeit asymptomatic) coronary heart disease."

We consider that the decision of the Commission denying an award was contrary to the manifest weight of the evidence. The evidence is that the claimant prior to experiencing "tremendous chest pains" and becoming acutely ill at lunch time had worked continuously for half a day without assistance, ascending and descending a 24-foot extension ladder and using the caulking gun. He had to brace himself with one hand and operate the gun with the other. He was subjected to extreme heat and noxious gas fumes when working near the ceiling and cold temperatures near the floor, which caused him alternately to perspire and to be chilled. After the episode of chest pains and acute illness he was unable to return to his usual work that afternoon. He was "ash gray," his wife testified, when he came home and "his lips were blue."

The claimant's physician said that the first episode was probably the beginning of the attack or at least the closing of a coronary artery. He said the first and second episodes were causally related. This is not a plain case of conflicting medical testimony. The respondent's physician said that he thought the "environmental stress" was not sufficient to cause the acute infarction unless there was a

preexisting cardiac condition, albeit one without symptoms and one of which the claimant was presumably unaware. He did not contradict or express doubt as to the occurrence of the episode of chest pain and general distress. That an employee may have had a preexisting disease will not of itself preclude an award under the Act. *Cossident v. Industrial Com.* (1974), 57 Ill. 2d 33, 37.

It is, of course, primarily for the Commission to make findings of fact, but its findings must be set aside if they are contrary to the manifest weight of the evidence. (*Andronaco v. Industrial Com.* (1972), 50 Ill. 2d 251; *Cossident v. Industrial Com.* (1974), 57 Ill. 2d 33.) Considering the evidence as a whole and the reasonable inferences to be drawn from it, we must conclude that the Commission's finding was contrary to the manifest weight of the evidence and the circuit court erred in confirming the Commission's decision. The judgment of the circuit court is reversed, and we remand the cause to the Commission for the determination and entry of an appropriate award.

*Reversed and remanded,*
*with directions.*