(No. 53615

EVA C. WILLIAMS, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Freeman United Coal Company, Appellee).

*Opinion filed April 17, 1981.—Rehearing denied June 4, 1981.*

118

Livingston, Barger, Brandt, Slater & Schroeder, of Bloomington (Ralph Schroeder, of counsel), for appellant.

Henry D. Noetzel & Associates, Ltd., of Peoria (Henry D. Noetzel, of counsel), for appellee.

MR. CHIEF JUSTICE GOLDENHERSH delivered the opinion of the court:

An arbitrator for the Industrial Commission found that Eva C. Williams, widow of Roy Stephen Williams, had failed to prove a causal connection between the death of the decedent and an alleged exposure to the hazards of an occupational disease in the course of his employment by respondent, Freeman United Coal Company, and denied her claim for compensation sought under the provisions of the Workmen's Occupational Diseases Act (Ill. Rev. Stat. 1975, ch. 48, par. 172.36 *et seq.*). The arbitrator also found that petitioner had failed to prove that the decedent

had sustained accidental injuries arising out of and in the course of his employment by the respondent which caused his death and denied her claim for compensation brought under the provisions of the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.1 *et seq.*). On review, without hearing additional testimony, the Industrial Commission affirmed and adopted the decisions of the arbitrator. On *certiorari* the circuit court of Fulton County confirmed the decisions of the Industrial Commission, and petitioner appealed. 73 Ill. 2d R. 302(a).

Petitioner testified that she had been married to decedent for 40 years. He was 60 years of age at death and had been employed by respondent for 34 years, working as a welder for approximately 20 years, and as a blacksmith for the nine months immediately prior to death. On September 8, 1976, he met petitioner after work at the Elks' Club in Canton to assist with the preparations for a fish fry. After beginning to mix ingredients for the "fish dip," decedent put his hands to his head and exclaimed: "Oh my God, my head, my head." He sat down in a folding chair, soon lost consciousness, and was transported by ambulance to the emergency room of Graham Hospital. While decedent regained consciousness for a short period in the emergency room, he ultimately became comatose, and was transferred to St. Francis Hospital in Peoria. He died on September 18, 1976, of "subarachnoid and intraventricular hemorrhage" attributable to a ruptured aneurysm on the left internal carotid artery.

The testimony shows that petitioner and decedent vacationed in California in early summer 1976 and decedent had returned to work in July. Decedent usually worked seven days each week. He had experienced no physical difficulties before July 23, when he returned from work early complaining of a severe headache. He saw a chiropractor on July 23, worked July 24, but returned home that day at his normal time, again complaining of

a headache. Although he felt ill, decedent worked both July 25 and 26. He did not work July 27. From July 27 until September 8, petitioner testified, "Some days he felt very good, and some days he had terrible headaches." Fellow employees also testified that occasionally decedent complained of headaches at work.

The testimony further showed that decedent's normal activities at home consisted of gardening or mowing the lawn. His employment as a blacksmith involved a variety of tasks, including repairing tools, rebuilding parts, sawing, and hammering with a sledge hammer. He also used a heating torch and a forge, and usually wore goggles while engaged in these endeavors. Decedent's prior work as a welder involved use of a torch with a cutting tip, and he normally wore a mask covering his entire face. The heat generated by his use of a torch and "heating tip" in connection with his work as a blacksmith greatly exceeded that associated with the welder's use of a torch and cutting tip.

Dr. Seymour Goldberg, a specialist in internal medicine whose father had been a blacksmith, testified in response to a hypothetical question that continuing work as a blacksmith "could or might have caused or contributed to the rupture of a pre-existing aneurysm." He also testified that the location of the aneurysm in the hypothetical statement of facts indicated that it was not congenital, but due to aging vessels, and that "the stress of an occupation such as that of a blacksmith could have had a deleterious effect on this aneurysm." Further Dr. Goldberg testified that a change of employment from a welder to a blacksmith was a change to "harder physical work" which "played a role" in the rupture of the aneurysm. On cross-examination Dr. Goldberg testified that he had treated three patients with aneurysms such as those described in the hypothetical, none of whom were blacksmiths. He also testified that if the blacksmith's area were well ventilated, the strain on

the individual would be reduced. Further Dr. Goldberg indicated that, while this aneurysm was probably "long standing," without an autopsy its age would be difficult to determine. On cross-examination he stated "the onset of this individual's aneurysm, the beginning of the leaking and rupture," might or could be unrelated to employment. He also noted: "And the aneurysm is there, it may or may not rupture, and the question in mind is did the heaviness of the employment cause it to rupture earlier than it would have otherwise, or would it have ever ruptured? *** I have no way of knowing that. All I know is that in the hypothetical it did rupture. He had the stresses and strains of heat and heavy work, which within a reasonable degree of medical certainty would have been a contributing factor toward the rupture at that time."

Citing *Lepper v. Industrial Com.* (1978), 71 Ill. 2d 216, and *Cossident v. Industrial Com.* (1974), 57 Ill. 2d 33, petitioner points out that the respondent offered no evidence, either lay or medical, and that the decision of the Industrial Commission that petitioner had failed to prove that the decedent suffered an accidental injury which caused his death is therefore against the manifest weight of the evidence. Alternatively, citing *Bunney v. Industrial Com.* (1979), 75 Ill. 2d 413, petitioner argues that compensation should have been awarded under the Workmen's Occupational Diseases Act because the evidence established the death of the employee following his exposure to an occupational disease subsequent to July 1, 1975. Respondent contends that the record sustains the findings of the Industrial Commission that decedent did not sustain accidental injuries arising out of and in the course of employment, and that his death was not caused by a disease aggravated and rendered disabling by his employment.

The record reflects the opinion of a medical expert, given without objection in response to a hypothetical

question, that the decedent died as the result of a rupture in a preexisting aneurysm. On cross-examination, however, the doctor admitted that "the beginning of the leaking and rupture" might have been unrelated to the employment. The fact that an employee may have suffered from a preexisting condition will not preclude an award if the condition was aggravated or accelerated by the employment. (*County of Cook v. Industrial Com.* (1977), 69 Ill. 2d 10, 17.) The employee need not prove employment was the sole causative factor or even that it was the principal causative factor, but only that it was a causative factor in the resulting injury. (*Cossident v. Industrial Com.* (1974), 57 Ill. 2d 33, 37.) The question before the Commission, therefore, was whether the work decedent performed was a causal factor in the rupture of the aneurysm. *Laclede Steel Co. v. Industrial Com.* (1955), 6 Ill. 2d 296, 302-04.

We do not read *Cossident v. Industrial Com.* (1974), 57 Ill. 2d 33, and *Lepper v. Industrial Com.* (1978), 71 Ill. 2d 216, as requiring us to hold that failure on the part of respondent to introduce evidence to rebut the testimony of petitioner's medical witness renders the decision of the Industrial Commission contrary to the manifest weight of the evidence. Furthermore, the facts of both cases are clearly distinguishable. In *Cossident* the claimant, while performing regular duties of employment, suffered an acute myocardial infarction after running a distance equivalent to four city blocks. (57 Ill. 2d 33, 37.) In *Lepper,* the claimant suffered "tremendous chest pains" and became acutely ill almost immediately after scaling a 24-foot, wooden extension ladder some 10 to 12 times, and caulking expansion joints with a caulking gun. 71 Ill. 2d 216, 217-19.

The fact that decedent was employed after the July 1, 1975, amendments to the Workmen's Occupational Diseases Act (see Pub. Act 79—78, sec. 1, eff. July 1, 1975) is of no significance in this case. On this record the Indus-

trial Commission could draw the inference that decedent had not contracted a disease either arising out of or in the course of employment, or aggravated as a result of the exposure of the employment. See *Bunney v. Industrial Com.* (1979), 75 Ill. 2d 413.

We are unable to say that the decisions of the Industrial Commission are contrary to the manifest weight of the evidence, and the judgment of the circuit court of Fulton County is affirmed.

*Judgment affirmed.*

MR. JUSTICE SIMON, dissenting:

I dissent, believing that in all important respects this case is the same as *Valley Mould & Iron Co. v. Industrial Com.* (1981), 84 Ill. 2d 538, which is also decided this day. The medical evidence in both cases was similar and sufficiently definite to establish that each claimant suffered injuries caused by work-related risks. In this case the medical evidence was unchallenged and uncontradicted. The nonmedical evidence in each case was highly convincing. In each the employee held a heavy, physical job which called for him to work in extreme heat. The deceased here was a blacksmith; the claimant in *Valley Mould* a skimmer in a casting plant. The only substantial difference between the two cases was the result reached by the Industrial Commission: denying the benefits here but granting the compensation in *Valley Mould.*

It is well settled that the decision of the Industrial Commission as to whether the worker's injuries arose in the course of employment will not be disturbed unless contrary to the manifest weight of the evidence. (*O'Dette v. Industrial Com.* (1980), 79 Ill. 2d 249, 253.) That principle is useful and important. But it should not bind us to conflicting results in substantially identical fact situations. It is a fundamental principle of jurisprudence that like cases should be treated alike. When, on sub-

stantially the same kind of facts, with substantially the same degree of medical certainty, the Industrial Commission reaches diametrically opposed results, it appears that something has gone wrong. I believe the Commission here acted against the manifest weight of the evidence in denying the claimant compensation, particularly in view of the fact that the claimant introduced medical testimony to the effect that his aneurysm could or might have been work related, while the employer offered no evidence, lay or medical. I therefore would reverse the decision to bring it into harmony with *Valley Mould.*

MR. JUSTICE CLARK joins in this dissent.